618 F.2d 1299
 102 L.R.R.M. (BNA) 2619, 87 Lab.Cas. P 11,579
 Rebecca BISE, Stella Bradley, Dan Carr, Frances Kaona, Wil
Klatt, Lillian Ornellas, Victoria Pappas, Maxine
Stones and Claude Stones, Plaintiffs-Appellees,
v.
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO
LOCAL 1969, Dick Cripe, Elsie M. Smith, and Does I
through XXV, Defendants-Appellants.
Rebecca BISE, Stella Bradley, Dan Carr, Frances Kaona, Wil
Klatt, Lillian Ornellas, Victoria Pappas, Maxine
Stones and Claude Stones, Plaintiffs-Appellants,
v.
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO
LOCAL 1969, Dick Cripe, Elsie M. Smith, and Does I
through XXV, Defendants-Appellees.
 Nos. 77-2386, 77-2405.
 United States Court of Appeals,
Ninth Circuit.
 Sept. 24, 1979.
As Corrected Oct. 9, 1979.
Rehearing Denied Dec. 19, 1979.
 
 Alan C. Davis, Davis, Cowell & Bowe, San Francisco, Cal., for defendants-appellants.
 Joseph E. Bergeron, San Mateo, Cal., for plaintiffs-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before KILKENNY and ANDERSON, Circuit Judges, and JAMESON,* District Judge.
 J. BLAINE ANDERSON, Circuit Judge:
 
 
 1
 This action was brought by nine members of the defendant Union, the International Brotherhood of Electrical Workers, Local 1969, under provisions of the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 411 et seq., seeking injunctive relief and damages for the allegedly wrongful discipline imposed on them by the Union.
 
 
 2
 The plaintiffs were all Union members and employees of Precision Plastics, Inc., at a time when a strike was sanctioned against Precision. During the strike the plaintiffs resigned from the Union and returned to work. After the strike had been settled, and the plaintiffs had rejoined the Union, the plaintiffs were charged with conduct in violation of the Union constitution. The charges included the unauthorized crossing of picket lines prior to resignation from the Union, working in concert with the struck employer, and engaging in activity to undermine the Local as the collective bargaining representative of Precision's employees. The Union trial board found the plaintiffs guilty as charged and fines were assessed. The Union then filed suit for collection of the fines from one plaintiff in state court. Thereupon, the plaintiffs brought this action alleging that the behavior for which they had been disciplined was protected under section 101(a)(2) of the LMRDA, 29 U.S.C. § 411(a)(2), which protects Union members' First Amendment rights of free speech and assembly, and that the fines were imposed in violation of the due process requirements of section 101(a)(5) of the LMRDA, 29 U.S.C. § 411(a) (5).
 
 
 3
 At trial the court granted the Union summary judgment on the issue of whether the Union had complied with the procedural requirements of section 101(a)(5). The 101(a)(2) issue was heard by a jury, which answered special interrogatories submitted by the court and also rendered a general verdict in favor of the plaintiffs. The jury awarded the plaintiffs $4,851 for compensatory damages and $80,000 for punitive damages. Thereafter, the court reduced the amount of punitive damages awarded to $20,000, and plaintiffs accepted the remittitur. The trial court then awarded the plaintiffs $20,000 in attorneys' fees and issued a permanent injunction prohibiting the Union from enforcing the Union fines against the plaintiffs. The Union has appealed and the plaintiffs have cross-appealed. We have jurisdiction under 28 U.S.C. § 1291.
 
 On appeal the Union argues that:
 
 4
 1. the district court erred in not requiring the plaintiffs to exhaust their intra-union remedies;
 
 
 5
 2. the evidence was insufficient to support the jury's verdict;
 
 
 6
 3. the awarding of compensatory damages was improper;
 
 
 7
 4. the awarding of punitive damages was improper; and
 
 
 8
 5. the awarding of attorneys' fees was improper.
 
 
 9
 In its cross-appeal the plaintiffs argue that:
 
 
 10
 1. the district court erred in finding that there was no violation of their section 101(a)(5) due process rights; and
 
 
 11
 2. the award of attorneys' fees was inadequate.
 
 DISCUSSION
 Exhaustion of Intra-Union Remedies
 
 12
 In its motion for summary judgment, the Union argued that the plaintiffs failed to exhaust their intra-union remedies in accordance with section 101(a) (4) of the LMRDA, 29 U.S.C. § 411(a)(4).[1] The district court denied this motion, and the Union raises the same issue on appeal.
 
 
 13
 It is well-established that the requirement of exhaustion of union remedies is a matter within the sound discretion of the courts.[2] NLRB v. Industrial Union of Marine and Shipbuilding Workers of America, 391 U.S. 418, 425-426, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968); Ross v. Int'l. Brotherhood of Electrical Workers, 544 F.2d 1022, 1024 (9th Cir. 1976); Detroy v. American Guild of Variety Artists, 286 F.2d 75, 78 (2d Cir. 1961), cert. denied, 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388 (1961). The exercise of the court's discretion to "require, or . . . not require, the exhaustion of internal (union) remedies prior to court intervention (depends) upon the reasonableness of such requirements in terms of the facts and circumstances of a particular case." NLRB v. Marine Workers, supra, 391 U.S. at 428, 88 S.Ct. at 1723 (quoting from the remarks of Senator John F. Kennedy). The trial judge found exhaustion to be inappropriate, and we agree.
 
 
 14
 One of the primary purposes of the exhaustion principle is to foster union self-regulation. Consequently, exhaustion of intra-union remedies before intervention by federal courts is "most absolute where the complaints allege wrongdoing regarding internal union affairs." Chambers v. Local Union No. 639, 188 U.S.App.D.C. 133, 142, 578 F.2d 375, 384 (D.C.Cir. 1978). Exhaustion is not required when the administrative remedies are inadequate. In NLRB v. Marine Workers, supra, 391 U.S. at 425, 88 S.Ct. at 1722, the Supreme Court stated:
 
 
 15
 "There cannot be any justification to make the public processes wait until the union member exhausts internal procedures plainly inadequate to deal with all phases of the complex problem concerning employer, union, and employee member. If the member becomes exhausted, instead of the remedies, the issues of public policy are never reached and an airing of the grievance never had."
 
 
 16
 Therefore, when, as here, the plaintiffs have raised issues that are in the public domain and beyond the internal affairs of the union, the union's internal procedures may be inadequate.[3] Chambers, supra, 188 U.S.App.D.C. at 143, 578 F.2d at 385. "First Amendment rights are among the most fragile possessions of a citizen. Delay in deciding the First Amendment issues could not only endanger the free speech rights of plaintiff(s) but of others of similar persuasion." Pearl v. Tarantola, 361 F.Supp. 288, 292 (S.D.N.Y.1973); Semancik v. United Mine Workers of America Dist. # 5, 466 F.2d 144, 150-151 (3d Cir. 1972); Giordani v. Upholsters' International Union of No. America, 403 F.2d 85, 88 n.7 (2d Cir. 1968); Keeffe Brothers v. Teamsters Local Union No. 592, 562 F.2d 298, 303 (4th Cir. 1977). Thus, in our opinion, the district court did not err in denying the Union's motion for summary judgment. In so doing, the court acted well within its discretion. No error was committed.[4]
 
 Sufficiency of Evidence
 
 17
 The facts relating to each of the charges have been exhaustively discussed in the briefs. We do not need to repeat them here. Both parties agree that the fines could not have been imposed against the plaintiffs for returning to work once they had resigned from the Union. NLRB v. Granite State Joint Board, Textile Workers Union, 409 U.S. 213, 93 S.Ct. 385, 34 L.Ed.2d 422 (1972); Booster Lodge No. 405, Int'l Ass'n of Machinists v. NLRB, 412 U.S. 84, 93 S.Ct. 1961, 36 L.Ed.2d 764 (1973). The issue presented to the court below was therefore one of determining the Union's intent and motive for disciplining the plaintiffs. There is substantial evidence in the record that in fact it was the plaintiffs' post-resignation return to work that prompted the fines. Moreover, the charges included pre-resignation conduct that was clearly within the protection of the LMRDA. We therefore find that the jury could have reasonably arrived at the conclusion that it was the Union's purpose to punish the plaintiffs for resigning and returning to work. The Union's attempt to weave the plaintiffs' conduct into an unprotected conspiracy is unavailing. "It matters not that the grounds urged by the Union to support its disciplinary action may have a semblance of lawfulness if the true motivation for the action was unlawful." NLRB v. Local 294, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, 470 F.2d 57, 62 (2d Cir. 1972). The evidence was sufficient to justify the jury's finding of a violation of plaintiffs' rights of freedom of speech and assembly.[5]Compensatory Damages
 
 
 18
 In International Brotherhood of Boilermakers v. Rafferty, 348 F.2d 307, 315 (9th Cir. 1965), this court held that "emotional distress, standing alone, does not constitute a sufficient basis for the awarding of damages under the (LMRDA)." The Union contends that the damages awarded the plaintiffs were for emotional distress alone, contrary to this court's holding in Rafferty. They argue that the evidence was insufficient to prove the existence of any injury other than emotional distress. We agree with the Union as to some of the plaintiffs and disagree as to the others.
 
 
 19
 With respect to Dan Carr, Wil Klatt, Stella Bradley, and Claude Stones, we vacate the jury's award of compensatory damages. This court's holding in Rafferty simply does not allow compensatory damages for being angry, nervous, upset, or depressed. We also vacate the jury's award of compensatory damages to Lillian Ornellas for the reason that there was no proof of any actual injury. While the plaintiff did testify that she had to leave work early several times because of being upset over the Union's charges, she did not testify, nor is there any evidence in the record, that she suffered any actual injury because of leaving work early, e. g., lost wages.
 
 
 20
 The award of compensatory damages to Rebecca Bise, Victoria Pappas, Maxine Stones, and Frances Kaona stands. As to these plaintiffs there was sufficient evidence of causal connection between the Union's conduct and the actual injuries allegedly sustained by each of the plaintiffs to present a jury question. It was for the jury to believe or not believe whether the conduct of the Union caused the respective plaintiffs to suffer lost wages and sleep, headaches and heart palpitations, numbness in the feet and hands, and an increase in weight. We will not disturb its decision.
 
 Punitive Damages
 
 21
 Although there is much controversy whether punitive damages are recoverable under the LMRDA, this court has adopted the view that they are. Cooke v. Orange Belt District Council of Painters, 529 F.2d 815, 820 (9th Cir. 1976).[6] Punitive damages are proper where the plaintiff can establish actual malice or reckless or wanton indifference to his rights. Id. Although we have disallowed compensatory damages as to some of the plaintiffs, we have also upheld the jury finding of a violation of the plaintiffs' section 411(a)(2) rights. All plaintiffs established their right to compensatory damages. Some of them failed to prove any such damages under our Rafferty ruling. Nevertheless, punitive damages are permissible to vindicate the invasion of those protected rights and as a deterrence against future violations by over-zealous unions and their officers. International Brotherhood of Boilermakers, Iron Shipbuilders, etc. v. Braswell, 388 F.2d 193, 199-201 (5th Cir. 1968). Cf. Gill v. Manuel, 488 F.2d 799, 802 (9th Cir. 1973) (an award of compensatory damages is not a necessary prerequisite to an award of punitive damages under 42 U.S.C. § 1983).
 
 
 22
 Accordingly, it was for the jury to determine whether the defendants acted with malice or recklessly or with wanton indifference. After careful consideration of the record, we are of the opinion that there is sufficient evidence to support the jury's award of punitive damages. It is not the function of this court to substitute its judgment for that of the jury's. Determining state of mind is a fact-finding task peculiarly within the jury's domain. We will therefore not disturb this finding on appeal.[7]
 
 Attorneys' Fees
 
 23
 The awarding of attorneys' fees under section 102 of the LMRDA is clearly within the equitable power of federal courts. Hall v. Cole, 412 U.S. 1, 9, 93 S.Ct. 1942, 36 L.Ed.2d 702 (1973); Ross v. IBEW, supra, 544 F.2d at 1025. Attorneys' fees are allowable when: (1) the opposing party acted in bad faith; (2) the litigation performed a valuable service for the union and its members. Ross, supra. The court below found both grounds to be present, and we cannot say such a finding was clearly erroneous. Therefore, the district court did not err in awarding attorneys' fees.
 
 
 24
 We also conclude that the amount of the award was appropriate. The amount of attorneys' fees awarded is within the sound discretion of the trial court. Ross, supra. The pertinent factors which are to be considered by the trial court in setting reasonable attorneys' fees in an LMRDA suit have been enumerated in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (9th Cir. 1975), cert. denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976).[8] The trial court carefully considered each of the Kerr factors in determining the amount of the award. We can find no abuse of discretion.[9] The amount of the award therefore stands.
 
 CONCLUSION
 
 25
 We have considered the other arguments raised by both the Union and the plaintiffs and find them to be without merit.[10] We therefore affirm on all issues with the exception of the jury's award of compensatory damages. As to the compensatory damage award we affirm in part and reverse and vacate in part as detailed above.
 
 
 26
 IT IS SO ORDERED.
 
 
 
 *The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.
 
 
 [1]
 29 U.S.C. § 411(a)(4) provides in pertinent part:
 "No labor organization shall limit the right of any member thereof to institute an action in any court, . . . Provided, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof."
 
 
 [2]
 Section 411(a)(4) does "not establish a jurisdictional bar or absolute waiver to judicial review, but preserves the discretionary exhaustion doctrine which allowed pre-LMRDA courts to determine whether pursuit of internal remedies should be required in a given case." Fulton Lodge No. 2, International Association of Machinists, etc. v. Nix, 415 F.2d 212, 216 (5th Cir. 1969), cert. denied, 406 U.S. 946, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972)
 
 
 [3]
 The mere assertion by a union member that his free speech rights have been infringed will not, in all cases, render the exhaustion doctrine inapplicable. It is within the sound discretion of the trial court to make this determination. Appellate review is limited to preventing an abuse of this discretion
 
 
 [4]
 The record also indicates that at the time the plaintiffs filed suit in the district court their intra-union appellate remedies had long since expired. There was therefore no assurance that the plaintiffs would have been able to vindicate their rights through union procedures
 
 
 [5]
 We are unimpressed by the Union's argument that judicial review of the intra-union proceedings is precluded since the disciplinary actions taken against the plaintiffs were supported by "some evidence" of guilt. The Union's reliance on International Brotherhood of Boilermakers v. Hardeman, 401 U.S. 233, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971) is misplaced. Unlike the question presented in Hardeman, the infirmity is not in the procedure used or the method of discipline, but in the fact that the discipline is being imposed for an improper purpose. To adopt the Union's reading of Hardeman would have the effect of "insulat(ing) any Union discipline of a member, so long as the charges brought against him are supported by 'some evidence', no matter how insubstantial or suspicious that evidence might be." NLRB v. Local 294, International Brotherhood of Teamsters, supra, 470 F.2d at 62. We will not adopt such a reading
 In Hardeman the Supreme Court stated:
 "There remains only the question whether the evidence in the union disciplinary proceeding was sufficient to support the finding of guilt. Section 101(a)(5)(C) of the LMRDA guarantees union members a 'full and fair' disciplinary hearing, and the parties and the lower federal courts are in full agreement that this guarantee requires the charging party to provide some evidence at the disciplinary hearing to support the charges made. This is the proper standard for judicial review. We have repeatedly held that conviction on charges unsupported by any evidence is a denial of due process (citations omitted) and we feel that § 101(a)(5)(C) may fairly be said to import a similar requirement into union disciplinary proceedings." Hardeman, supra, 401 U.S. at 245-246, 91 S.Ct. at 617.
 The Second Circuit in NLRB v. Local 294, International Brotherhood of Teamsters, supra, the Honorable Leonard P. Moore speaking for the Court, interpreted the above passage as follows:
 "The clear import of the language cited is not that 'some evidence' to support the charge will preclude Board or judicial review, but rather, that unless some evidence is presented by the charging party against the accused member the Union will be held to have violated the due process requirement implicit in Section 101(a)(5)(C) of the Act." 470 F.2d at 62.
 We agree with Judge Moore's reading of Hardeman. Hardeman did not involve freedom of speech or assembly. While we must respect the congressional judgment of judicial noninterference in the internal affairs of unions, we must also not forget the special need to protect individual members against the danger of overreaching by entrenched union leadership.
 
 
 [6]
 We are aware of the Supreme Court's ruling in IBEW v. Foust, 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979), but find it inapposite here. Foust did not overrule or cast doubt on this court's decision in Cooke, supra. The majority opinion in Foust expressed no opinion on the propriety of punitive damages in suits under the Landrum-Griffin Act. Foust, supra, 442 U.S. at 47, 99 S.Ct. 2121, 60 L.Ed.2d at 704, n.9. Although the legislative history of the Landrum-Griffin Act is not all that clear (and is probably inconclusive), it may be said that the overall thrust of the Act was to protect the individual rights of union members and to deter abuse and denial thereof by union officers. The awarding of punitive damages will, in proper cases, serve this purpose
 
 
 [7]
 The Union does not question the trial court's punitive damages instructions
 
 
 [8]
 These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Kerr, supra, 526 F.2d at 70
 
 
 [9]
 This conclusion also settles the matter of the plaintiffs' cross-appeal for additional attorneys' fees
 
 
 [10]
 We find no merit in the plaintiffs' argument that the Union's charging letters were not specific enough to satisfy the requirements of section 101(a) (5). We believe that the charges were specific enough to inform the plaintiffs, with reasonable particularity, of the details of the alleged violations. Moreover, there is no evidence in the record to indicate that the charging letters misled or compromised the defense of any plaintiff. The plaintiffs' other arguments under section 101(a)(5) are frivolous and do not warrant discussion