Carol KELLER, Individually and as Executrix of the Estate of Howard A. Keller, Plaintiff,

v.

FEASTERVILLE FAMILY HEALTH CARE CENTER, John Howell Peniston and Steven M. Rosenberg, Defendant.

Civil Action No. 07–CV–2309.

United States District Court, E.D. Pennsylvania.

May 29, 2008.

Carol A. Shelly, Mellon, Webster & Shelly, Doylestown, PA, for Plaintiff.

Daniel P. Martz, White and Williams, Philadelphia, PA, for Defendant.

## ORDER

TIMOTHY R. RICE, United States Magistrate Judge.

AND NOW, this 29th day of May, 2008, upon consideration of the following motions and responses, and for the reasons stated in the accompanying memorandum opinion, it is hereby ORDERED that:

1. Plaintiff's motion in limine to preclude portions of Dr. Barry Rovner's testimony (Document No. 33) is DENIED.

2. Plaintiff's motion in limine to preclude portions of Dr. David E. Epstein's testimony (Document No. 34) is DENIED.

3. Plaintiff's motion in limine to preclude portions of Dr. Arthur McTighe's testimony (Document No. 36) is GRANTED, in part.

4. Plaintiff's motion in limine to preclude portions of Dr. John Spandorfer's testimony (Document No. 37) is DENIED.

5. Defendants' motion in limine to preclude portions of Dr. Richard Callery's testimony (Document No. 29) is DENIED.

6. Defendants' motion in limine to preclude portions of Dr. Christopher A. Haines' testimony (Document No. 30) is DENIED.

7. Defendants' motion in limine to preclude Dr. Wendy Forman's testimony (Document No. 31) is GRANTED.

8. Defendants' motion in limine to preclude recovery or presentation of evidence of damages involving Plaintiff's lost wages, medical expenses and depression caused by the grief over the decedent's death (Document No. 32) is GRANTED.

## MEMORANDUM OPINION

This wrongful death and malpractice case requires consideration of the requirements for expert testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The primary issue is whether the parties' experts may opine whether decedent had undiagnosed Alzheimer's disease first discovered during an autopsy,

and the disease's impact on decedent's life expectancy.

*Daubert* is a rule of flexibility, liberally construed to allow admissibility of expert testimony. *Pineda v. Ford Motor Co.,* 520 F.3d 237, 243 (3d Cir.2008). Exclusion of expert testimony is the exception rather than the rule because "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Fed.R.Evid. 702 (advisory committee notes) (citing *Daubert,* 509 U.S. at 595, 113 S.Ct. 2786). Guided by these principles, it is hereby ORDERED that the motions filed under Docket Nos. 29 (Dr. Richard Callery, F.A.C.P.), 30 (Dr. Christopher A. Haines), 33 (Dr. Barry Rovner), 34 (Dr. David E. Epstein), 37 (Dr. John Spandorfer) are DENIED, Docket No. 36 (Dr. Arthur McTighe) is GRANTED, in part, and Docket Nos. 31 (Dr. Wendy Forman), and 32 (Damages) are GRANTED.

## I.  *Background*

Plaintiff Carol Keller, individually and in her capacity as the administrator of the estate of her deceased husband, Howard Keller, brought this medical malpractice and wrongful death action against defendants, Dr. John Peniston and Dr. Steven Rosenberg, and their professional corporation, Feasterville Family Health Care Center. Keller alleges defendants were negligent in their care and treatment of the decedent while under their care for pneu-

monia, and caused decedent's death on June 19, 2005. Keller claims the decedent died from a pulmonary embolism, or blood clots in the lungs, which defendants had failed to diagnosis.

Drs. Peniston and Rosenberg are family practice physicians at Feasterville Family Healthcare Center. They contend they properly treated decedent for his pneumonia, had no reason to suspect the presence of pulmonary emboli while decedent was under their care, and dispute the cause of death.

After her husband's death, Keller asked for an autopsy of his brain to be included in his autopsy. Although the decedent was not diagnosed with Alzheimer's disease, Keller said she had noticed the onset of memory problems before his death. The brain autopsy showed pathologic evidence of Alzheimer's disease.[1] Alzheimer's disease is a brain disorder that destroys brain cells, causing problems with memory, thinking and behavior severe enough to affect work, lifelong hobbies or social life. *See* Alzheimer's Association Home Page, What is Alzheimer's, http://www.alz.org/alzheimers_disease_what_is_alzheimers.asp (last visited May 27, 2008). Alzheimer's disease is progressive and fatal. *Id.* The parties' experts dispute the diagnosis of Alzheimer's disease and the effect the diagnosis would have had on decedent's future.

## II.  *Legal Standard*

The party offering an expert must establish by a preponderance of the evidence

---

1. The final autopsy report showed no abnormalities in the brain but a more detailed description occurred in the neuropathological report. *See* Defendants' Motion No. 29 at Exhibit A. The neurological autopsy report diagnosed Alzheimer's disease, based on evidence that different parts of the brain revealed senile plaques, neurofibrillary tangles and hypertensive changes, and immunohisto-chemical stains for Beta Amyloid highlighted deposition of amyloid plaques within all sections of the cortex, and staining showed neurofibrillary tangles and dystrophic neurites throughout the cortex and hippocampus. *Id.* The significance and interpretation of these medical findings constitute the basis for most of the *Daubert* challenges.

the qualifications of the expert witness and the expert opinion's compliance with Federal Rule of Evidence 702. *See Daubert,* 509 U.S. at 592–93, 113 S.Ct. 2786 (citing Fed.R.Evid. 104(a)); *Robinson v. Hartzell Propeller, Inc.,* 2007 WL 2571447, *4 (E.D.Pa. Aug. 30, 2007) (DuBois, J.) (citing *In re TMI Litig.,* 193 F.3d 613, 663 (3d Cir.1999)). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702. Rule 702 has " 'a liberal policy of admissibility.' " *Pineda,* 520 F.3d at 243 (quoting *Kannankeril v. Terminix Int'l, Inc.,* 128 F.3d 802, 806 (3d Cir.1997)). However, an expert must satisfy the three "restrictions on expert testimony: qualification, reliability and fit." *Schneider ex rel. Estate of Schneider v. Fried,* 320 F.3d 396, 404 (3d Cir.2003) (citing *In re Paoli Railroad Yard PCB Litigation,* 35 F.3d 717, 741–43 (3d Cir.1994) ("*Paoli II*")).

Qualification requires the witness possess specialized expertise, *Pineda,* 520 F.3d at 244 (citing *Schneider,* 320 F.3d at 404), which encompasses a broad range of knowledge, skills, and training, *Pineda,* 520 F.3d at 244 (citing *Paoli II,* 35 F.3d at 741). An "expert's testimony is not limited to the area in which he or she [ ] specialize[s]," but "the party offering the expert must demonstrate that the expert has the necessary expertise." *Ferris v. Pa. Fed'n Bhd. of Maint. Of Way Employees,* 153 F.Supp.2d 736, 743 (E.D.Pa.2001) (DuBois, J.). If the expert testimony falls outside a witness's expertise, I should exclude it. *Id.* Nevertheless, I may not exclude proposed expert testimony simply because I do not deem the expert the best qualified or because the expert is without the appropriate specialization. *Holbrook,* 80 F.3d at 782. The "best" qualified is a matter of weight upon which reasonable jurors may disagree. *Id.* A certain degree or background is not required under the flexibility of Rule 702. *See id.*

■ Similarly, "an experts's testimony is admissible so long as the process or technique used in formulating the opinion is reliable," *Pineda,* 520 F.3d at 247 (citing *Paoli II,* 35 F.3d at 742), and the expert's principles and methods are reliably applied to the facts of the case, Fed.R.Evid. 702 (advisory committee notes). The "expert's opinions must be based on the methods and procedures of science, rather than on subjective belief or unsupported speculation." *Paoli II,* 35 F.3d at 742 (citations and internal quotations omitted). Thus, "the expert must have 'good grounds' for his or her belief." *Id.* (quoting *Daubert,* 509 U.S. at 590, 113 S.Ct. 2786).

■ In evaluating whether a particular methodology is reliable, and reliably applied to the facts, several factors may be considered:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subjected to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Paoli II,* 35 F.3d at 742 n. 8. This list is " 'neither exhaustive nor applicable in ev-

ery case.'" *Pineda*, 520 F.3d at 248 (quoting *Kannankeril*, 128 F.3d at 806–07). Ultimately, the purpose of the reliability requirement "is to make certain an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). As such, the "focus must be solely on principles and methodology, not on the conclusions they generate." *Paoli II*, 35 F.3d at 744. I must examine the expert's conclusions to determine whether they reliably follow from the facts known to the expert and the methodology used. *Heller v. Shaw Industries, Inc.*, 167 F.3d 146, 153 (3d Cir.1999). "A court may conclude that there is simply too great a gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

"While a litigant has to make more than a prima facie showing that his expert's methodology is reliable ... 'the evidentiary requirement of reliability is lower than the merits standard of correctness.'" *Pineda*, 520 F.3d at 247 (quoting *Paoli II*, 35 F.3d at 744). I have significant latitude both in deciding "how to test an expert's reliability" and in deciding "whether or not the expert's relevant testimony is reliable." *Kumho*, 526 U.S. at 152, 119 S.Ct. 1167. The "'inquiry envisioned by Rule 702 is ... a flexible one.'" *Pineda*, 520 F.3d at 248 (quoting *Daubert*, 509 U.S. at 594, 113 S.Ct. 2786).

■ If an expert's testimony rests on "good grounds ... it should be tested by the adversary process-competing expert testimony and active cross-examination— rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." *United States v. Mitchell*, 365 F.3d 215, 244 (3d Cir.2004); *Robinson*, 2007 WL 2571447, at *5. "A party confronted with an adverse expert witness who has sufficient, though perhaps not overwhelming, facts and assumptions as the basis for his opinion can highlight those weaknesses through effective cross-examination." *Mitchell*, 365 F.3d at 244 (quoting *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir.2002)). Vigorous cross-examination, as Professor Wigmore noted, is "beyond any doubt the greatest engine ever invented for discovery of truth." *Watkins v. Sowders*, 449 U.S. 341, 349 n. 4, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981) (citing 5 J. Wigmore, Evidence § 1367, p. 32 (J. Chadbourn rev. 1974)); *see also* Fed.R.Evid. 702 (advisory committee notes) (citing *Daubert*, 509 U.S. at 595, 113 S.Ct. 2786).

■ "In addition to the "good grounds" requirement, in a diversity case such as this, state rules on the degree of certainty required of an expert's opinion apply. In Pennsylvania, a doctor can [offer] an opinion [only] if he or she can do so with a reasonable degree of medical certainty." *Heller*, 167 F.3d at 153 n. 4 (citing *Paoli II*, 35 F.3d at 750–52).

In assessing the third restriction on the admissibility of expert testimony, the testimony's "fit," the Court must ascertain whether the testimony is "relevant for the purposes of the case" and whether it "assist[s] the trier of fact." *Schneider*, 320 F.3d at 404. This "helpfulness standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.* (quoting *Daubert*, 509 U.S. at 591–92, 113 S.Ct. 2786).

### III. Keller's Daubert Motions

#### A. Keller's Motion in Limine to Preclude Portions of Dr. Barry Rovner's Testimony

Keller seeks to preclude Dr. Rovner from offering the following opinion:

[Decedent]'s likely duration of survival, had he not died in June, 2005, would have ranged from 3 to 11 years, with an average of about 7 to 8 years. His cognitive symptoms would have worsened during this time and would have prevented him from working effectively. My clinical experience suggests that he would have had to relinquish his job within two years of the onset of his symptoms in 2005.

Plaintiff's Motion in Limine to Preclude Portions of Expert Opinions of Barry Rovner, M.D. at 3 (Document No. 33), *Keller v. Feasterville Family Health Care Ctr.*, No. 07–2309 (E.D.Pa. filed Apr. 16, 2008).

Keller asserts Dr. Rovner's opinion regarding a post-autopsy diagnosis of Alzheimer's disease and her husband's future with the disease is unreliable because it is speculative, lacks foundation, lacks the requisite degree of medical certainty, and would confuse the jury and/or cause the jury to speculate decedent's future. *Id.* Keller claims no expert could reasonably state with medical certainty when precisely decedent would have started to decline medically, when he would have stopped working, when he would have died, or how the disease would have effected him," so "a jury [would] be left to speculate and guess." *Id.* at 10. Additionally, Keller asserts Dr. Rovner's opinion is prejudicial and lacks probative value under Rule 403. *Id.* at 9–11. Keller does not challenge Dr. Rovner's qualifications or the fit of the testimony under Rule 702. *Id.* at 7.

▪ First, Dr. Rovner's opinion is reliable because it relied on "good grounds." His opinion was based on methods and procedures of science, *see Paoli II*, 35 F.3d at 742, which included the decedent's medical records and other sources of information, Dr. Rovner's extensive experience with Alzheimer's patients, and his and other experts' research and data in the field.

*Id.* Dr. Rovner's qualifications assist in establishing the reliability of his methodology. *See id.* (qualifications listed as a factor to determine reliability); *Robinson*, 2007 WL 2571447, at *4 n. 7 (qualifications may enhance the reliability of expert testimony). Dr. Rovner's curriculum vitae lists his vast professional experience, training, and research regarding Alzheimer's disease and dementia. *See* Response to Plaintiff's Motion in Limine to Preclude Portions of the Testimony of Barry Rovner, M.D. at Exhibit B (Document No. 42), *Keller v. Feasterville Family Health Care Ctr.*, No. 07–2309 (E.D.Pa. filed Apr. 30, 2008). For example, he currently serves as the director of Clinical Research in Neurodegenerative Disease at Thomas Jefferson University, formerly served as Director of Clinical Alzheimer's Disease Research, conducted clinical trials involving Alzheimer's disease, served on review committees concerning Alzheimer's disease and dementia, taught courses involving dementia and Alzheimer's disease, and published numerous peer-reviewed journal articles addressing Alzheimer's disease. *See id.*

Such expertise justifies the reliability of Dr. Rovner's methodology. *Compare e.g., Schneider*, 320 F.3d at 406 (doctor's experience "renders his testimony reliable [and] demonstrates that his testimony is based on good grounds."), *Odyssey Waste Services, LLC, v. BFI Waste Systems of North Amer., Inc.*, 2007 WL 674594, at *15 (E.D.Pa. Feb. 28, 2007) (Pratter, J.) (motion to exclude denied because it challenged the accuracy of the dates, rates and figures used in applying the method rather than the reliability of the method), *Lillis v. Lehigh Valley Hosp. Inc.*, 1999 WL 718231, at *7 (E.D.Pa. Sept. 3, 1999) (Van Antwerpen, J.) (testimony reliable because based on sound methods of expert's knowledge of the policy standards through his

clinical experience and serving on committees to draft such policies), *and Robert Billet Promotions, Inc. v. IMI Cornelius, Inc.,* 1998 WL 721081, at *11 (E.D.Pa. Oct. 14, 1998) (Hutton, J.) (expert applied appropriate methodology to find good grounds supported his conclusion by interviewing plaintiff, reviewing documents, and consulting a treatise and research in the field), *with Feit v. Great West Life and Annuity Ins. Co.,* 271 Fed.Appx. 246, 253–55 (3d Cir.2008) (expert's opinion alleging head and neck injuries caused death unreliable because it was based on speculation as it could not flow from the data and methodology when no autopsy was performed on the head and neck), *Heller,* 167 F.3d at 163 (testimony unreliable when substantial differences existed between emission rates in studies and the expert's estimates), *and Player v. Motiva Enterprises, LLC,* 2006 WL 166452, at *8 (D.N.J. Jan. 20, 2006) (expert's contaminated property figures unreliable because methodology relied on sending an email with a misleading hypothetical to lenders and receiving four responses).

Additionally, Dr. Rovner reliably applied his methodology to the facts of this case. *See* Fed.R.Evid. 702 (advisory committee notes). Dr. Rovner considered Keller's deposition that the decedent had memory difficulties in January 2005, which prompted her request for a brain autopsy. *See* Plaintiff's Motion No. 33 at Exhibit A. Dr. Rovner also noted sworn testimony of other witnesses who had not observed any impaired memory by decedent, the absence of cognitive impairment in the decedent's medical records, and defendant Peniston's deposition testimony he noted no

memory difficulties. *Id.* Nevertheless, Dr. Rovner noted studies establish primary care physicians often fail to detect cognitive deficits. *Id.* He opined decedent had clinical symptoms of cognitive decline. *Id.* Dr. Rovner also discussed the neuropathological findings of Alzheimer's disease in providing his opinion. *Id.* In opining on decedent's life expectancy, Dr. Rovner relied on his practice and scholarly experience as well as the Baltimore Longitudinal Study of Aging and the Monogahela Valley Independent Elders Survey. *Id.* He used the data from the studies to estimate decedent's life expectancy with Alzheimer's disease. *Id.* Dr. Rovner's conclusion reliably follows from the facts as he knew them, and the methodology used. *See Heller,* 167 F.3d at 153. If Keller believes such studies are insufficient, any defects in Dr. Rovner's methodology can be challenged on cross-examination. *Mitchell,* 365 F.3d at 244. I cannot preclude Dr. Rovner's testimony merely because Keller challenges the available research or the novelty of the science. *See Daubert,* 509 U.S. at 592 n. 11, 599, 113 S.Ct. 2786 (while well-established propositions are less likely to be challenged than novel propositions, evidence need not be generally accepted to be admissible).

Thus, under Rule 702's flexible inquiry, I find Dr. Rovner's opinion admissible because the process used in formulating and applying his opinion is reliable, *see Pineda,* 520 F.3d at 247, and he states such opinion to a reasonable degree of medical certainty, *see Heller,* 167 F.3d at 153 n. 4. I need not find his methodology has the best foundation or is correct.[2] *See Pineda,* 520

---

**2.** Keller alleges the expert testimony concerning mere possibilities is inadmissible. *See* Plaintiff's Motion No. 33 at 7 (citing *Saldana v. Kmart Corp.,* 260 F.3d 228 (3d Cir.2001)); *Booth v. Black & Decker, Inc.,* 166 F.Supp.2d 215 (E.D.Pa.2001); *Paoli R.R. Yard PCB Li-*

*tig.,* 2000 WL 274262, at *6 (E.D.Pa.2000) (*"Paoli I"*). Dr. Rovner's opinion does not suggest a mere possibility solely based on his comment of the likely survival duration. Opinions stated in terms of what is most likely differ from an opinion of mere possibili-

F.3d at 247; *Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (3d Cir.2000). Any weaknesses or inadequacies Keller believes exist with the facts and assumptions of Dr. Rovner's conclusions can be highlighted through effective cross-examination. *See Mitchell*, 365 F.3d at 244; *Lee v. Taekwondo Union*, 2006 WL 5240611, at *4 (D.Haw. Jan. 26, 2006) (expert's assumption of a person's work-life expectancy is admissible but subject to vigorous cross-examination).

Finally, I decline to exclude Dr. Rovner's testimony as speculative and confusing under either Rule 403 or 702. Whether decedent had Alzheimer's disease and the effect of the disease on his future is relevant to the issue of damages. *See* Fed.R.Evid. 401. Keller does not dispute otherwise. *See* Plaintiff's Motion No. 33. Nevertheless, I may exclude such evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403.

Dr. Rovner's testimony regarding the existence of Alzheimer's disease and its effect will be helpful to the jury if the jurors find the disease existed by providing a methodology to reasonably estimate damages. By identifying a medical basis to establish the existence of disease, Dr. Rovner's experience in the field gives him ample grounds to offer a projected life expectancy. His opinion is not guesswork; rather it is the product of extensive experience and study, documented methodology, and reliable application to the facts. Because I find the expert's testimony rests on "good grounds ... it should be tested by the adversary process, ... rather than excluded from jurors' scrutiny for fear" it would confuse them. *Mitchell*, 365 F.3d at 244; *Robinson*, 2007 WL 2571447, at *5. There is no chance the jury could be confused or misled by Dr. Rovner's testimony because there is nothing particularly confusing about the testimony other than its general complexity as medical evidence. *See Paoli II*, 35 F.3d at 747. To the extent such a possibility may exist, it does not substantially outweigh the probative value of the evidence's impact on helping the jury quantify damages.

Rather, it would distort the truth-seeking process if the jury decided this case without having an opportunity to weigh what impact, if any, evidence of the decedent's latent Alzheimer's disease had on Keller's claim. If Keller is permitted to request future damages for the life of her husband without allowing testimony regarding the diagnosis of Alzheimer's disease, it would present a false picture to the jury to defendants' detriment. *See* Restatement (Second) of Torts § 924 cmt. e (2008) (If a "person was, unknown to him, suffering from a serious malady at the time of the accident, his life expectancy includes a consideration of such fact."). Fairness considerations prevent exclusion of evidence regarding Alzheimer's disease.

ty. *See Kirschner v. Broadhead*, 671 F.2d 1034, 1039–40 (7th Cir.1982) (opinion stating what is "most likely" is admitted to be weighed by the jury). Additionally, the cases cited by Keller are distinguishable. Unlike *Saldana,* where the court found, absent any relevant evidence, the mere possibility something occurred in a particular way is insufficient, Dr. Rovner's opinion relies on evidence from the autopsy and medical record. 260 F.3d at 234. Unlike *Booth,* where the plaintiff could present only a metaphysical possibility of the cause of the fire because experts were precluded from testifying to the design or manufacturing defect, Dr. Rovner's opinion is reliable. 166 F.Supp.2d at 221, 223. Finally, Keller incorrectly cited the defendants' argument in *Paoli I* for the proposition "a possible diagnosis is too speculative," whereas the holding of the case excluded the expert opinion for failing to rule out alternative causes. 2000 WL 274262, at *6.

The assumptions made by Dr. Rovner regarding the decedent's Alzheimer's diagnosis and the effect on his future concern the weight accorded his testimony, not its admissibility. *See In re Orthopedic Bone Screw Products Liability Litig.*, 1997 WL 230818, at *11 (E.D.Pa. May 5, 1997) (Bechtle, J.). Keller's ability to introduce conflicting expert testimony further alleviates any risk of jury confusion or unfair prejudice. As with any factual dispute, the jury will exercise its traditional function of weighing all of the evidence and giving expert testimony whatever weight, if any, it merits. *See Mitchell*, 365 F.3d at 245 (conflicting expert opinions create a factual issue for jury resolution).

In any event, determinations of future damages on life expectancies are inherently predictive. *See Lee*, 2006 WL 5240611, at *4. Dr. Rovner's assumptions on Alzheimer's disease do not make the jury's determination of damages any more speculative. Reliance on cross-examination, and competing expert testimony resolve any concerns of prejudicially complex testimony being heard by a jury. *See In re Orthopedic Bone Screw Products Liability Litig.*, 1997 WL 230818, at *10. A properly instructed jury is competent to afford Dr. Rovner's testimony appropriate weight. *Id.* at *11. Therefore, I find no danger of unfair prejudice, confusion of the issues, or misleading the jury in allowing Dr. Rovner's testimony regarding Alzheimer's disease, and will not preclude the testimony on Rule 403 grounds. *See* Fed.R.Evid. 403. Furthermore, Rule 403 is an unlikely basis for exclusion when the testimony survived the rigors of Rule 702. *See In re Orthopedic Bone Screw Products Liability Litig.*, 1997 WL 230818, at *10.

B. *Keller's Motion in Limine to Preclude Portions of Dr. David E. Epstein's Testimony*

Keller seeks to preclude Dr. Epstein from: (1) citing Dr. McTighe's opinion the pulmonary emboli found at autopsy were "insufficient to represent cause of death" and adopting it as his own, because it is hearsay to recite the opinion of another expert, and the opinion lacks proper foundation; (2) opining it is "highly possible [decedent], while recovering from pneumonia, developed a cardiac dysrythmia due to hypertensive and or ischemic cardiomyopathy which led rapidly to his demise" because it lacks proper foundation, is speculative, lacks the requisite degree of medical certainty, and will confuse the jury or cause the jury to guess or speculate; and (3) opining it is "likely that [decedent] was in the early stages of Alzheimer's and had he lived would likely have progressed to more advanced stages in the years ahead" because it lacks proper foundation, is speculative, lacks the requisite degree of medical certainty, and will confuse the jury or cause the jury to guess or speculate. *See* Plaintiff's Motion in Limine to Preclude Portions of Testimony of David E. Epstein, M.D. at 3 (Document No. 34), *Keller v. Feasterville Family Health Care Ctr.*, No. 07–2309 (E.D.Pa. filed Apr. 16, 2008) [hereinafter Plaintiff's Motion No. 34]. Keller does not challenge Dr. Epstein's qualifications or the fit of his testimony. *Id.* at 8.

■ First, Dr. Epstein's opinion recites Dr. McTighe's opinion, but only as an alternative theory of cause of death by stating the theory "is very plausible in a man with long-standing hypertension, left ventricular thickening, and a low HDL (36 on 5/19/00)." *See id.* at Exhibit A. Dr. Epstein opined on this theory based on his review of the pathological data, his experience reviewing pathology reports, and his review of the medical records and other sources of information. *See id.* at Exhibit A. His opinion is reliable and does not lack

foundation; it was based on "methods and procedures of science," which establish good grounds for his opinion, *see Paoli II*, 35 F.3d at 742; *Schneider*, 320 F.3d at 406 (reliable testimony for similar reasons); *Odyssey Waste Services, LLC*, 2007 WL 674594, at *15 (same); *Lillis*, 1999 WL 718231, at *7 (same); *Robert Billet Promotions, Inc.*, 1998 WL 721081, at *11 (same), and is stated with a reasonable degree of medical certainty, *Heller*, 167 F.3d at 153 n. 4.

Moreover, no support exists in the text or history of the Federal Rules of Evidence, or case law to limit an expert from reviewing and referring to the opinions of other experts. *Jordan v. Pinamont*, 2007 WL 4440900, at *1 (E.D.Pa. May 8, 2007) (Davis, J.). To the contrary, Rule 703 authorizes an expert to use any data reasonably relied upon by experts in the field. *See* Fed.R.Evid. 703; *In re TMI Litig.*, 193 F.3d at 697; *Jordan*, 2007 WL 4440900, at *1. Rule 703 permits experts to rely on hearsay, on the theory that "the expert's validation, expertly performed and subject to cross examination, ought to suffice for judicial purpose." *ID Security Sys. Canada, Inc. v. Checkpoint Sys. Inc.*, 249 F.Supp.2d 622, 695 (E.D.Pa.2003) (Robreno, J.) (quoting Fed.R.Evid. 702 advisory committee's note). Thus, even if Dr. Epstein relied solely on Dr. McTighe's testimony, his reliance would be proper because physician's generally rely on a specialist's interpretation of data. *See Holbrook v. Lykes Bros. Steamship Co., Inc.*, 80 F.3d 777, 781–82 (3d Cir.1996) (internal medicine physician's reliance on pathology report reflects routine procedure in medical treatment); *Jordan*, 2007 WL 4440900, at *1.

Keller's second and third challenges to portions of Dr. Epstein's opinion are denied because Dr. Epstein's opinion was based on his review of the medical records and numerous other sources of information, his experience regularly reviewing pathology reports for his practice, and his experience in family medicine. *See* Plaintiff's Motion No. 34 at Exhibit A. Based on that foundation, I find Dr. Epstein had good grounds for his opinion, and therefore, his testimony is reliable and admissible. *See Paoli II*, 35 F.3d at 742. Any weaknesses or inadequacies Keller believes exist with the facts and assumptions of Dr. Epstein's conclusions can be highlighted through effective cross-examination. *See Mitchell*, 365 F.3d at 244.

For the reasons herein, there is no basis to exclude Dr. Epstein's testimony regarding Alzheimer's disease under Rule 403. Keller cites no danger of unfair prejudice or jury confusion, and any arguable unfair prejudice does not substantially outweigh the probative value of Dr. Epstein's opinion. *See* Fed.R.Evid. 403. His opinion is helpful to the jury and Keller has myriad options to challenge, limit, and discount the testimony. Furthermore, Rule 403 is an unlikely basis for exclusion when the testimony survived the rigors of Rule 702. *See In re Orthopedic Bone Screw Products Liability Litig.*, 1997 WL 230818, at *10.

C.  *Keller's Motion in Limine to Preclude Portions of Dr. Arthur McTighe's Testimony*

Keller seeks to preclude Dr. McTighe from opining on three issues. The first issue is Dr. McTighe's opinion "the liver sections reveal significant microvesicular and macrovesicular steatosis," which is seen in patients in "association with alcoholism, diabetes, or obesity." *See* Plaintiff's Motion in Limine to Preclude Portions of Expert Opinions of Arthur McTighe, M.D. at 3 (Document No. 36), *Keller v. Feasterville Family Health Care Ctr.*, No. 07–2309 (E.D.Pa. filed Apr. 16, 2008) [hereinafter Plaintiff's Motion No.

36]. Keller claims the opinion lacks factual and scientific foundation and is irrelevant, is prejudicial and lacks probative value, and would confuse the jury. *Id.* The second issue is Dr. McTighe's opinion "the minimal thromboembolic disease demonstrated in the lungs at autopsy appears to be insufficient to represent the cause of death" so "the changes of myocyte hypertropgy and interstitial fibrosis within the heart may be associated with cardiac arrhythmia and may represent the cause of death." *Id.* Keller claims the opinion is speculative, lacks proper foundation, lacks the requisite degree of medical certainty, would confuse the jury, and cause the jury to guess or speculate. *Id.* The third issue is Dr. McTighe's opinion on decedent's future with Alzheimer's disease because the opinion's speculative nature does not survive Rule 403. *Id.* at 403.

■ First, Keller's motion to preclude Dr. McTighe from testifying regarding any condition of alcoholism, diabetes or obesity is granted. No evidence exists suggesting decedent had such conditions. Dr. McTighe cannot reliably apply his methodology to the facts of this case. *See Heller,* 167 F.3d at 153; Fed. R. Evid 702 (advisory committee notes). His testimony would be no more than unsupported speculation. *See Paoli II,* 35 F.3d at 742; *Oddi,* 234 F.3d at 158. Without a factual basis suggesting decedent had one of the conditions associated with steatosis, the testimony does not fit because it is irrelevant and would not assist the trier of fact. *See Schneider,* 320 F.3d at 404.

■ Second, Keller's motion to preclude Dr. McTighe from testifying as to the cause of death is denied. Dr. McTighe's opinion was based on his review of the medical records and numerous other sources of information including pathological evidence, his experience as a pathologist who regularly considers medical histories and pathological evidence to determine a cause of death, and his board certification in anatomic and clinical pathology. *See* Defendants' Response to Plaintiff's Motion in Limine to Preclude Portions of Testimony of Arthur McTighe, M.D. at Exhibit B (Document No. 43), *Keller v. Feasterville Family Health Care Ctr.,* No. 07–2309 (E.D.Pa. filed Apr. 30, 2008). Based on the foundation underlying Dr. McTighe's opinions, I find he had good grounds for his opinion, and therefore, it is reliable and admissible. *See Paoli II,* 35 F.3d at 742. Any weaknesses or inadequacies in the facts and assumptions of Dr. McTighe's conclusions can be highlighted through effective cross-examination. *See Mitchell,* 365 F.3d at 244.

For the reasons herein, there is no basis to exclude Dr. McTighe's testimony regarding Alzheimer's disease or the cause of death under Rule 403. Keller's claim the opinion's speculative nature causes unfair prejudice or jury confusion is unavailing because I found the foundations underlying Dr. McTighe's opinion reliable. Any arguable unfair prejudice does not substantially outweigh the probative value of Dr. McTighe's opinion, which he states to a reasonable degree of medical certainty. *See* Fed.R.Evid. 403. His opinion is helpful to the jury and Keller has myriad options to challenge, limit, and discount the testimony. Furthermore, Rule 403 is an unlikely basis for exclusion when the testimony survived the rigors of Rule 702. *See In re Orthopedic Bone Screw Products Liability Litig.,* 1997 WL 230818, at *10.

### D. Keller's Motion in Limine to Preclude Portions of Dr. John Spandorfer's Testimony

Keller seeks to preclude Dr. Spandorfer's opinion quoting and adopting Dr. McTighe and stating "the patient may have had a pulmonary embolism, only inci-

dentally found on autopsy and not the cause of death." *See* Plaintiff's Motion in Limine to Preclude Portions of John Spandorfer, M.D., F.A.C.P. at 3 (Document No. 37), *Keller v. Feasterville Family Health Care Ctr.*, No. 07–2309 (E.D.Pa. filed Apr. 16, 2008) [hereinafter Plaintiff's Motion No. 37]. Keller asserts Dr. Spandorfer's opinion lacks foundation, is based on hearsay, i.e. Dr. McTighe's opinion, and is outside the area of his expertise.

■ Dr. Spandorfer's opinion recites Dr. McTighe's opinion, but only to explain his review of the medical records finding of "extremely atypical clinical features," which "did not allow for an ante-mortem diagnosis of [pulmonary embolism]." *See* Plaintiff's Motion No. 37 at Exhibit A. Dr. Spandorfer reviewed Keller's complaint, medical records, autopsy report of pathological data, depositions of doctors, and expert reports. *See id.* His opinion was based on reviewing those documents, and on his experience reviewing pathology reports in his practice to make clinical diagnoses, his professional experience in internal medicine, and his medical training. Therefore, based on these factors, he has good grounds for his testimony, so his opinion is reliable and does not lack foundation. *See Paoli II*, 35 F.3d at 742; *Schneider*, 320 F.3d at 406 (reliable testimony for similar reasons); *Odyssey Waste Services, LLC*, 2007 WL 674594, at * 15 (same); *Lillis*, 1999 WL 718231, at *7 (same); *Robert Billet Promotions, Inc.*, 1998 WL 721081, at *11 (same).

Moreover, even if Dr. Spandorfer merely relied on Dr. McTighe's testimony, this reliance is proper because physician's generally rely on a specialist's interpretation of data. *See Holbrook*, 80 F.3d at 781–82; *Jordan*, 2007 WL 4440900, at *1; Fed. R.Evid. 703.

Additionally, Dr. Spandorfer's opinion is not excluded based on Keller's claim his testimony is outside the scope of his expertise. Dr. Spandorfer is an internal medicine physician, not a pathologist. However, I may not exclude his testimony merely because he lacks a degree or specialty in pathology. *Holbrook*, 80 F.3d at 782. Because Dr. Spandorfer regularly reviews pathological data in his internal medicine practice, his testimony is reliable and not outside the scope of his expertise. *See Ferris*, 153 F.Supp.2d at 743; *see e.g.*, *Holbrook*, 80 F.3d at 781–82 (district court erred in finding internal medicine physician "not qualified to render a diagnosis or to discuss the pathology report because he was not a pathologist ...."). Whether he is the "best" qualified to provide such testimony is a jury question. *Holbrook*, 80 F.3d at 782.

## IV. *Defendant's Daubert Motions*

A. *Defendant's Motion in Limine to Preclude Portions of Dr. Richard Callery's Testimony*

Defendants seek to preclude Dr. Callery from opining on "clinical diagnosis and treatment issues, including the standard of care for family medicine physicians, or opining as to the diagnosis of Alzheimer's Disease, as these issues are outside of his area of expertise." *See* Defendant's Motion in Limine to Preclude Certain Testimony of Plaintiff's Expert Dr. Richard Callery at 1 (Document No. 29), *Keller v. Feasterville Family Health Care Ctr.*, No. 07–2309 (E.D.Pa. filed Apr. 16, 2008) [hereinafter Defendant's Motion No. 29]. Defendants focus on the following opinion as outside the scope of his expertise:

(1) Decedent had been experiencing symptoms of repeated pulmonary thromoemboli including swelling of his lower extremities, productive cough with blood tinged mucus, shortness of breath and chest pain. These symptoms were pres-

ent at least beginning on May 25, 2005. These symptoms are consistent with multiple pulmonary emboli.

(2) Decedent had syncopal or near syncopal events on June 17, 2005 and June 18, 2005. He continued to cough up dark colored sputum consistent with blood tinged mucus. These are consistent with on going and repeated pulmonary thrombo-emboli.

*See* Defendant's Motion No. 29 at Exhibit E.

Defendants also seek to preclude the following opinions by Dr. Callery regarding the diagnosis of Alzheimer's disease because he lacks specialized training in the area:

> The neuropathology autopsy report incorrectly diagnoses him with Alzheimer's disease. The diagnosis of Alzheimer's disease cannot be made with any reasonable degree of medical certainty in the absence of appropriate clinical correlation.... The diagnosis of Alzheimer's disease in the autopsy protocol is incorrect, as there is no evidence that he was ever clinically diagnosed as suffering from dementia. In the absence of a clinical diagnosis of dementia, any histologic interpretation of the diagnosis of Alzheimer's disease on immunohistochemical stains is unsound.

*See* Defendants' Motion No. 29 at Exhibit E.

To propose an opinion that Mr. Howard Keller has Alzheimer's disease without a clinical diagnosis of dementia is incorrect and misleading at best and in my opinion downright ridiculous. Decedent did not have Alzheimer's disease as he never had a diagnosis of dementia. Merely having a history of forgetting something on occasion does not qualify an individual for a clinical diagnosis of dementia.

*See* Defendants' Motion No. 29 at Exhibit G.

Defendants argue § 1303.512 of Pennsylvania's Medical Care Availability and Reduction of Error ("MCARE") Act establishes the requirements for experts to testify in medical malpractice actions. Thus, they argue, § 512(c) requires an expert to have the same subspecialty or board certification by the same board as defendants, and precludes Dr. Callery from testifying because he is board certified as a pathologist and medical examiner, not as an internal or family medicine physician like defendants, or an expert of Neuropsychiatry or Alzheimer's disease. *See* Defendants' Motion No. 29 at 9, 16.[3]

■ Section 512(c) states "an expert testifying as to a physician's standard of care also must ... (2)[p]ractice in the same subspecialty as the defendant physician or in a subspecialty which has a substantially similar standard of care for the specific care at issue, [and] (3) in the event

---

**3.** Section 512 of MCARE is a rule of witness competency, not a rule of expert qualification. 40 P.S. § 1303.512(a) ("General Rule—No person shall be competent to offer an expert medical opinion in a medical professional liability action against a physician unless ..."). Federal Rule of Evidence 601 applies state rules of witness competency to federal diversity cases, stating "with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law." *See* Fed.R.Evid. 601;

*Miville v. Abington Memorial Hospital*, 377 F.Supp.2d 488, 492 (E.D.Pa.2005) (Brody, J.). No conflict exists with determining the competency of a medical expert under Rule 601 and determining the admissibility of expert testimony under Rule 702. *See Miville*, 377 F.Supp.2d at 492 (citing *Legg v. Chopra*, 286 F.3d 286, 291 (6th Cir.2002); *McDowell v. Brown*, 392 F.3d 1283, 1294–97 (11th Cir. 2004)). Thus, § 512 of MCARE applies under Rule 601, and Dr. Callery must meet its requirements to be competent to testify. *See Miville*, 377 F.Supp.2d at 492.

the defendant physician is certified by an approved board, be board certified by the same or a similar approved board ...." 40 P.S. § 1303.512(c). Nevertheless, defendants claim lacks merit.

First, Dr. Callery does not offer any opinion on standard of care issues and will not testify defendants deviated from any accepted standard of care. His opinions address decedent's diagnoses based on the medical records, not the care provided by defendants. *See* Defendants' Motion No. 29 at Exhibit E. The requirement of practice in the same subspecialty or certification by the same board as defendants applies only to experts testifying to standard of care issues, and only to testimony against defendants, not to testimony that conflicts with other experts. *See* 40 P.S. § 1303.512. Thus, defendants' motion under § 512 of MCARE is denied as moot, but may be revisited if Dr. Callery attempts to offer an opinion on defendants' standard of care.

Second, Dr. Callery's testimony is not precluded under Rule 702.[4] Defendants claim Dr. Callery's testimony in the areas of clinical, family medicine and neuropathology issues is outside his expertise because he is a pathologist and medical examiner. I may not exclude his testimony merely because he lacks a degree or specialty in clinical medicine, family medicine, or neuropathology. *Holbrook*, 80 F.3d at 782. Dr. Callery's broad range of knowledge, skills, and training in the areas qualify him as an expert, despite his lack of specialty. *Pineda*, 520 F.3d at 244. An "expert's testimony is not limited to the area in which he or she [ ] specialize[s]," but "the party offering the expert must demonstrate that the expert has the necessary expertise." *Ferris*, 153 F.Supp.2d at

743. Dr. Callery regularly reviews pathological data in his internal medicine practice, thereby rendering his testimony within his expertise. *See Ferris*, 153 F.Supp.2d at 743; *see e.g., Holbrook*, 80 F.3d at 781–82 (district court erred in finding internal medicine physician "not qualified to render a diagnosis or to discuss the pathology report because he was not a pathologist ..."). Whether he is the "best" qualified to provide such testimony, especially on the issue of Alzheimer's disease, is a matter of weight for the jurors. *Holbrook*, 80 F.3d at 782. Additionally, based on Dr. Callery's professional experience, training, and expertise as a pathologist I find his testimony reliable because it relies on good grounds. *See Paoli II*, 35 F.3d at 742; *Schneider*, 320 F.3d at 406 (reliable testimony for similar reasons); *Odyssey Waste Services, LLC*, 2007 WL 674594, at *15 (same); *Lillis*, 1999 WL 718231, at *7 (same); *Robert Billet Promotions, Inc.*, 1998 WL 721081, at *11 (same).

### B. *Defendant's Motion in Limine to Preclude Portions of Dr. Christopher A. Haines' Testimony*

Defendants seek to preclude Dr. Haines from testifying about the interpretation of neuropathology or the diagnosis of Alzheimer's disease, and the impact of the diagnosis on life expectancy, as these issues are outside his area of expertise. *See* Defendants' Motion in Limine to Preclude Testimony of Plaintiff's Expert, Christopher Haines, M.D. at 2 (Document No. 30), *Keller v. Feasterville Family Health Care Ctr.*, No. 07–2309 (E.D.Pa. filed Apr. 16, 2008). Defendants argue § 1303.512(d)(1) of MCARE applies, and Dr. Haines fails to meet the qualifications because he does not

---

4. Defendants challenge Dr. Callery's qualifications only under MCARE's provision for standard of care issues. However, because the qualifications have been challenged, I also will consider them under Rule 702.

have any specialized training in neuropathology, neurology or psychiatry related to the field of Alzheimer's disease. *See id.* at 15–16.

■ As discussed above, § 1303.512 applies under Rule 601. *See Miville,* 377 F.Supp.2d at 492. Sections 512(d), (d)(1) state "[a] court may waive the same subspecialty requirement for an expert testifying on the standard of care for the diagnosis or treatment of a condition if the court determines that ... the expert is trained in the diagnosis or treatment of the condition, as applicable ...." 40 P.S. § 1303.512(d).

Defendants challenge Dr. Haines' testimony regarding Alzheimer's disease, not Dr. Haines' testimony regarding defendants standard of care. *See* Defendants' Motion No. 30. Section 512(d) is limited to expert testimony on standard of care issues. *See* 40 P.S. § 1303.512(d). Thus, the requirements of § 512(d) of MCARE do not apply to Dr. Haines' testimony.

Moreover, Dr. Haines' testimony is not precluded under Rule 702.[5] Defendants challenge Dr. Haines' qualifications, alleging Dr. Haines' testimony regarding Alzheimer's disease is outside his scope of expertise because he is board certified in family medicine, and never received any specialized education, training or experience in neuropathology, neurodegenerative diseases or Alzheimer's disease. *See* Defendants' Motion No. 30 at 7. However, I may not exclude his testimony merely because he lacks a degree or specialty in neuropathology, neurodegenerative diseases or Alzheimer's disease. *Holbrook,* 80 F.3d at 782. An "expert's testimony is not limited to the area in which he or she [ ] specialize[s]," but "the party offering the expert must demonstrate that the expert

has the necessary expertise." *Ferris,* 153 F.Supp.2d at 743. Dr. Haines obtained a Certificate of Added Qualifications in geriatric medicine, practices in the area of geriatrics, and regularly participates in the clinical diagnosis and treatment of Alzheimer's disease patients. Dr. Haines' broad range of knowledge, skills, and training in the area qualify him as an expert, rendering his testimony within the scope of his expertise, despite his lack of specialty. *Pineda,* 520 F.3d at 244; *Ferris,* 153 F.Supp.2d at 743; *see e.g., Holbrook,* 80 F.3d at 781–82 (district court erred in finding internal medicine physician "not qualified to render a diagnosis or to discuss the pathology report because he was not a pathologist ..."). Whether he is the "best" qualified to provide such testimony is a matter of weight for the jurors. *Holbrook,* 80 F.3d at 782. Additionally, based on Dr. Haines' professional experience and training, I find his testimony reliable because it relies on good grounds. *See Paoli II,* 35 F.3d at 742; *Schneider,* 320 F.3d at 406 (reliable testimony for similar reasons); *Odyssey Waste Services, LLC,* 2007 WL 674594, at *15 (same); *Lillis,* 1999 WL 718231, at *7 (same); *Robert Billet Promotions, Inc.,* 1998 WL 721081, at *11 (same).

C. *Defendant's Motion in Limine to Preclude Portions of Dr. Wendy Forman's Testimony*

■ Defendants seek to preclude Dr. Forman's testimony regarding Keller's struggles with decedent's death because "it lacks foundation, includes improper expert opinions, is duplicative and is irrelevant" to any claims or damages in this case. *See* Defendants' Motion in Limine to Preclude Testimony of Plaintiff's Psychotherapist, Dr. Wendy Forman at 6 (Document No.

---

5. Defendants challenge Dr. Haines' qualifications only under MCARE's provision for standard of care issues, but I will consider them under Rule 702.

31), *Keller v. Feasterville Family Health Care Ctr.*, No. 07–2309 (E.D.Pa. filed Apr. 16, 2008). Keller states "Dr. Forman will testify as a fact witness, to wit, her recollections regarding Keller's struggle with the death of her husband," and such evidence is relevant to damages because the "sequelae [Keller] suffers as a result of the loss of companionship" and society of her husband is compensable under the Wrongful Death Statute. *See* Plaintiff's Answer in Opposition to Defendants' Motion in Limine to Preclude Testimony of Wendy Forman, Ph.D. at 3–4, 9 (Document No. 46), *Keller v. Feasterville Family Health Care Ctr.*, No. 07–2309 (E.D.Pa. filed Apr. 30, 2008). Testimony concerning Keller's emotional struggle with the death of her husband is irrelevant. Thus, I preclude such testimony and will not address defendants other claims.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Irrelevant evidence is not admissible. Fed.R.Evid. 402.

Pennsylvania's Wrongful Death Statute, 42 Pa.C.S. § 8301, compensates decedent's survivors for the pecuniary losses they sustained as a result of decedent's death. *Linebaugh v. Lehr*, 351 Pa.Super. 135, 505 A.2d 303, 305 (1986); *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672, 675 n. 3 (1979). This recovery includes damages for the loss of the services, society and comfort decedent would have provided if he survived, which is, in part, the essential nature of a claim for loss of consortium.

*Rittenhouse v. Hanks*, 777 A.2d 1113, 1120 (Pa.Super.Ct.2001); *see also Linebaugh*, 505 A.2d at 305. Thus, a surviving spouse may not maintain a separate loss of consortium claim in addition to claiming damages under the Wrongful Death Act. *Linebaugh*, 505 A.2d at 305. No recovery is permitted for grief and mental suffering, i.e. solatium, resulting from the loss of a decedent. *Mazzagatti v. Everingham*, 512 Pa. 266, 516 A.2d 672, 679 (1986) (citing *Sinn*, 404 A.2d at 675 n. 3) (wrongful death recovery for solatium not allowed); *Papieves v. Lawrence*, 437 Pa. 373, 263 A.2d 118, 122 (1970) (citing *Ferne v. Chadderton*, 363 Pa. 191, 69 A.2d 104 (1949)); *Skoda v. W. Penn Power Co.*, 411 Pa. 323, 191 A.2d 822, 828 (1963).

Additionally, no recovery for such damages is permitted under Pennsylvania's Survival Statute, 42 Pa.C.S. § 8302. A survival action is an action "decedent himself could have instituted had he survived," *see Mishoe v. Erie Ins. Co.*, 573 Pa. 267, 824 A.2d 1153, 1159 n. 9 (2003) (quoting *In re Pozzuolo's Estate*, 433 Pa. 185, 249 A.2d 540, 544 (1969)), which could not logically include injuries suffered by Keller after decedent's death.

Thus, because no recovery is permitted for Keller's mental anguish over decedent's death, Dr. Forman's testimony would not make the existence of any fact of consequence more probable.[6] *See Mazzagatti*, 516 A.2d at 681; Fed.R.Evid. 401, 402. Moreover, if I determined Dr. Forman was offering expert testimony, it would be precluded because an expert may not suggest damages not legally recovera-

---

**6.** Similarly, I grant defendants' motion in limine to preclude Keller from "seeking recovery of or presenting evidence of or eliciting fact or expert testimony with regard to [Keller's] lost wages, medical expenses and depression" caused by her grief over her husband's death, *see* Defendants' Motion in

Limine to Preclude Plaintiff's Damage Claims for Depression, Lost Income, and Personal Medical Expenses (Document No. 32), *Keller v. Feasterville Family Health Care Ctr.*, No. 07–2309 (E.D.Pa. filed Apr. 16, 2008).

ble, such as Keller's grief and mental suffering over decedent's death. *See Odyssey Waste Services, LLC*, 2007 WL 674594, at *14. Keller may testify about her loss of decedent's services, society and comfort, but there is no need for an expert on those issues.

An appropriate Order follows.